IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RUSSELL H. JONES,                )
                                 )
              Plaintiff,         )
                                 )
                                 )    CIV-11-530-W
v.                               )
                                 )
MICHAEL J. ASTRUE,               )
  Commissioner of Social Security )
   Administration,               )
                                 )
              Defendant.         )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his concurrent applications for disability insurance and

supplemental security income benefits under Title II and Title XVI of the Social Security

Act, 42 U.S.C. §§ 416(i), 423, 1382.  Defendant has answered the Complaint and filed the

administrative record (hereinafter TR___), and the parties have briefed the issues.   The

matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that

the Commissioner's decision be affirmed.

I. Background

Plaintiff filed his applications on October 29, 2007, and in his applications Plaintiff

alleged that he became disabled on July 9, 2007. (TR 107-109, 110-112).  He alleged

disability due to mental impairments, a heart attack, hepatitis C viral infection, sinusitis,

arthritis, acid reflux, high blood pressure, alcoholism, seizures, numbness in his feet, inability to lift, and pain "all over." (TR 133). He described previous work as a produce loader, welder, and painter. (TR 134, 298). Plaintiff stated that he had attained a general equivalency degree in 1996, that he been released from prison on July 11, 2007, and that he last worked on July 9, 2007, apparently in a prison work-release program. (TR 133). In a questionnaire concerning his daily activities completed by Plaintiff in November 2007, Plaintiff stated he had been in and out of jail and prison as a result of alcoholism, anxiety, and depression "all my life." (TR 150). He indicated he lived with his mother, watched television, cleaned his room, did not like people, could not concentrate, did not drive or cook, and had chest pain, difficulty breathing, weak and painful muscles, and poor vision. (TR 151-154).

Plaintiff submitted medical evidence reflecting that he had suffered a myocardial infarction in December 2006 and had undergone a successful operation to place a stent in his left anterior descending artery. (TR 175-215). Dr. Sublet, the treating surgeon, noted that Plaintiff had residual moderately severe stenosis in the right coronary artery and two branches of his heart. (TR 215). Electrocardiogram testing in July 2007 was normal, and Plaintiff was diagnosed with coronary artery disease with unstable angina. (TR 217-218). In August 2007, Plaintiff underwent a cardiac catheterization procedure in which a second stent was placed, and Plaintiff was also informed that his hepatitis C test was positive. (TR 219-221). In August 2007, Plaintiff was examined by Dr. Contreras, who noted Plaintiff had recently been released from jail, that he complained of pain "everywhere," depression,

shortness of breath, and heart palpitations, and that he was consuming a large amount of alcohol every week. (TR 292-293).  Stress echocardiogram testing of Plaintiff conducted in July 2008 was interpreted by Dr. Holley as negative and reflecting a "low probability for myocardial ischemia." (TR 362).  In a physical examination conducted by Dr. Spielman in April 2009, the physician noted that Plaintiff exhibited no musculoskeletal or neurological deficits. (TR 543).  In August 2009, Plaintiff underwent an exercise tolerance test, which was interpreted as normal. (TR 435).  Plaintiff exercised for approximately 4 ½ minutes and did not experience chest pain during the test.  (TR 435).  In November 2009, electrocardiogram testing was interpreted as "unremarkable," and a chest x-ray was normal. (TR 484).  Plaintiff exhibited normal range of motion of all musculoskeletal areas in a physical examination conducted by Dr. Childs in November 2009. (TR 484).  The remainder of the medical record is discussed *infra*.

Plaintiff's applications were administratively denied. (TR 64-67).  At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Thompson ("ALJ") on May 11, 2009. (TR 31-63).  At this hearing, Plaintiff and a vocational expert ("VE") testified.  The ALJ issued a decision on October 20, 2009, in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  (TR 20-30).  With Plaintiff's request for review of this decision, Plaintiff submitted additional medical

evidence. (TR 7).  The Appeals Council considered the additional medical evidence[1] and

declined to review the ALJ's decision. (TR 4-7).

II. Standard of Review

        Plaintiff seeks judicial review of the final decision of Defendant Commissioner

embodied in the ALJ's determination.  Judicial review of a decision by the Commissioner

is limited to a determination of whether the Commissioner's factual findings are supported

by substantial evidence in the record and whether the correct legal standards were applied.

Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758,

760 (10th Cir. 2003).  The "determination of whether the ALJ's ruling is supported by

substantial evidence must be based upon the record taken as a whole.  Consequently, [the

court must] remain mindful that evidence is not substantial if it is overwhelmed by other

evidence in the record." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009)(citations,

internal quotation marks, and brackets omitted).

        The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 416(i).  The Commissioner

follows a five-step sequential evaluation procedure to determine whether a claimant is

---

[1]The additional medical evidence concerned treatment of Plaintiff prior to the date of the
ALJ's decision, and this evidence is now considered a part of the record for purposes of judicial
review. O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994).

disabled. <u>Doyal</u>, 331 F.3d at 760. In the first four steps of this process, the claimant has the burden of establishing a prima facie case of disability. <u>Id.</u>  In this case, Plaintiff's claim was denied at step five.  At the fifth and final step of the requisite sequential evaluation process, the burden shifts to the Commissioner "to show that the claimant retains sufficient [residual functional capacity] . . . to perform work in the national economy, given her age, education and work experience." <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted).

III. <u>Analysis</u>

Pursuant to the Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847, a claimant is preluded from receiving benefits if "alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that [the claimant] is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). "[T]he key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he . . . stopped using drugs or alcohol." <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1214 (10th Cir. 2001); *see also* 20 C.F.R. §§ 404.1535, 416.935 (describing "contributing factor" analysis).

At the second step of the required sequential analysis, the ALJ found that Plaintiff had severe impairments due to depression, antisocial personality disorder, alcohol dependence, status post myocardial infarction with stenting, and hepatitis C viral infection. (TR 23).  At step three, the ALJ found that Plaintiff's mental impairments due to depression and substance addiction disorders met the requirements of Listing 12.04, which addresses affective

5

disorders, and Listing 12.09, which addresses substance addiction disorders. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.09.

Unlike most other listings set out in Appendix 1 of the Commissioner's regulations, Listing 12.09 does not describe the necessary medical findings and functional limitations that could support a finding of *per se* disability. Rather, Listing 12.09 "is structured as a reference listing; . . . it . . . only serve[s] to indicate which of the other listed mental or physical impairments must be used to evaluate the behavioral or physical changes resulting from regular use of addictive substances." Id. at § 12.00(A). Under this listing, a claimant's impairment due to substance addiction disorder is *per se* disabling when the requirements of one or more of Listings 12.02, 12.04, 12.06, 12.08, 11.14, 5.00, 5.05, 5.08, 11.02, or 11.03 are satisfied. Id. at § 12.09.

In this case, the ALJ reviewed the medical evidence in the record and found that when Plaintiff was abusing alcohol he had "marked" restrictions in activities of daily living, he had "marked" difficulties in social functioning, and he had "marked" difficulties in concentration, persistence, or pace. (TR 24). As these findings were sufficient to satisfy the requirements of Listing 12.04 and, by reference, Listing 12.09, the ALJ found that Plaintiff's severe mental impairments met the requirements of Listing 12.04[2] and Listing 12.09. The ALJ then found

---

[2]In the ALJ's decision, the ALJ states that Plaintiff's "mental impairments, including the substance use disorder, meet listings 12.04, 12.04 [sic], and 12.09." (TR 23). It is not clear from this statement whether the ALJ also found that Plaintiff's mental impairment due to antisocial personality disorder met the requirements of Listing 12.08, the listing for personality disorders. It is not necessary, however, to this decision whether Plaintiff's mental impairments were found to have satisfied one or two of the listings referenced in Listing 12.09.

that if Plaintiff's substance abuse ceased he would still have severe physical impairments. (TR 24).

The ALJ also addressed whether Plaintiff's other mental impairments would continue in the absence of Plaintiff's substance addiction impairment. Considering the medical evidence in the record during the period of time that Plaintiff testified he was not abusing alcohol after July 2008 (TR 40), the ALJ found that Plaintiff's remaining mental impairments caused no limitations in activities of daily living, no limitations in social functioning, no difficulties in maintaining concentration, persistence or pace, and no episodes of deterioration. (TR 24-25). The ALJ found that, independent of his substance addiction disorder, Plaintiff did not have a severe mental impairment and he had the residual functional capacity ("RFC") to perform work at the medium exertional level with limitations of occasional climbing, no more than frequent balancing, stooping, kneeling, crouching, and crawling, and as long as he could avoid concentrated exposure to extreme cold or exposure to dangerous moving machinery or unprotected heights. (TR 28). Relying on the VE's hearing testimony as to the availability of jobs for an individual with the foregoing RFC for work, the ALJ found that Plaintiff's alcoholism was a contributing factor material to the disability determination and that Plaintiff would not be disabled if he stopped his substance abuse. (TR 28-29).

Plaintiff contends that there is not substantial evidence to support the ALJ's determination that Plaintiff's substance abuse impairment is a contributing factor material to the disability determination. Plaintiff first contends that "[o]ther than a one-time report

of a single incident of intoxication, the record is essentially devoid of alcohol or substance abuse during Mr. Jones' claimed period of disability."  Plaintiff's Brief, at 9.  Plaintiff, however, admitted to a consultative psychological examiner, Dr. Phoha, in January 2008 that he had a long history of alcohol abuse, including having been detained in jail "more than 30 times" and imprisoned two times for alcohol-related offenses. (TR 298).  Dr. Phoha noted that Plaintiff "smelled of alcohol" at the time of the examination and that Plaintiff admitted drinking alcohol the previous night and drinking up to 24 beers during weekends. (TR 298).  Dr. Phoha's diagnostic impression was alcohol dependence with possible alcohol-induced mood disorder[3] and symptoms of antisocial personality disorder. (TR 299).  Dr. Phoha noted Plaintiff had a "serious history of alcohol abuse." (TR 300).

Plaintiff's mother provided answers on a questionnaire concerning Plaintiff's daily activities, and she reported that Plaintiff's alcohol abuse affected many of his functional abilities, including his social functioning, personal hygiene, and sleeping patterns. (TR 157-160).  She reported that Plaintiff did not work and spent any money he obtained on alcohol and "personal" items. (TR 158).

In a consultative physical examination of Plaintiff conducted by Dr. Bagley in January 2008, Dr. Bagley noted that Plaintiff again "smelled of alcohol" and that he admitted drinking a case of beer on weekends. (TR 318).  During a hospital emergency room visit in June 2008 for his complaint of chest pain, Plaintiff admitted that he had been "drinking

---

[3]Plaintiff's suggestion that Dr. Phoha's report indicated he "ruled out" the presence of an alcohol-induced mood disorder, Plaintiff's Opening Brief, at 8, is not supported by the record.

heavily," and the examining physician noted a diagnostic impression of "heavy" alcohol use. (TR 341-343).   One week later, Plaintiff's mother took him to a hospital emergency room because she feared he was suicidal. (TR 350).   The examining physician, Dr. Raisani, noted that Plaintiff was obviously under the influence of alcohol and "obviously he drinks excessively." (TR 350, 352).   Plaintiff admitted he was using alcohol daily and also abusing narcotic medication. (TR 352).   The diagnostic impression set forth in this record was alcohol intoxication and abuse, psychosis, noncompliance, Lortab® abuse, and pain syndrome. (TR 353).   Plaintiff was admitted for detoxification (TR 353), and Dr. Raisini noted after Plaintiff's admission that Plaintiff was problematic to himself and the medical staff because "[h]is entire interest seems to be in seeking drugs." (TR 359).   By July 5, 2008, Dr. Singh, Plaintiff's treating psychiatrist, noted that Plaintiff did not exhibit any symptoms of alcohol withdrawal, and Plaintiff was discharged on July 7, 2008. (TR 366-367).

In November 2008, Plaintiff sought mental health treatment at a clinic for depression, anxiety, and bipolar disorder and stated that he was living with his brother.  (TR 383, 385, 391).   He reported he stopped using alcohol four months before and that he took care of his brother's children while his brother and his brother's wife worked. (TR 389-391, 393). Plaintiff's mental health medications were managed by Dr. Haque every one to three months between November 2008 and October 2009. (TR 397-398, 403, 409-410, 414, 523, 525-526, 529, 534).

Plaintiff sought treatment at hospital emergency rooms in April 2009, August 2009, and October 2009 for chest pain, a rib contusion, and pleurisy.  (TR 432-435, 478-484, 539-

546, 547, 550-551).  In April 2009, the examining physician, Dr. Spielman, noted Plaintiff's mood and affect were appropriate. (TR 543).  Dr. Spielman also noted Plaintiff's drug-seeking behavior during his brief hospitalization at that time for cardiac testing. (TR 541). In August 2009, Plaintiff reported that his only medication was an inhaler. (TR 545).  The examining physician noted in October 2009 that Plaintiff reported occasional alcohol use[4] and that he exhibited no abnormal psychiatric symptoms. (TR 483-484).

In a psychiatric review technique form completed by a medical consultant, Dr. Williams, in January 2008, Dr. Williams found that Plaintiff's substance addiction disorder with symptoms of personality disorder satisfied the requirements of Listing 12.09 as Plaintiff's substance addiction disorder and personality disorder had resulted in three "marked" functional limitations. (TR 301-311).

Plaintiff's assertion that the record lacked sufficient evidence of alcohol or substance abuse during the relevant time period is a misreading of the medical record.  The record shows that when he was abusing alcohol Plaintiff exhibited severely restricted functional abilities.  After July 2008, when Plaintiff testified that he stopped abusing alcohol, there is no record of any hospitalizations for depression or other mental impairments, and no treating or examining physician found that Plaintiff was unable to work or that his ability to work was restricted by a mental impairment.  The ALJ's finding that Plaintiff's substance addiction

---

[4]Whether this note describes alcohol "use," as Plaintiff suggests, or alcohol "abuse" is irrelevant given Plaintiff's history of abusing alcohol both for a lengthy period of time before he alleged his disability began and after he alleged he was disabled.

disorder, with reference to Plaintiff's co-existing mental impairments, was both a disabling mental impairment and a contributing factor to the disability determination is well supported by the record.

The ALJ found that in the absence of alcohol abuse Plaintiff would not have a severe mental impairment.  The ALJ properly considered the record of Plaintiff's mental health treatment after the date that he testified he stopped abusing alcohol.  The ALJ found that Plaintiff first sought regular mental health treatment for depression, anxiety, and bipolar disorder in November 2008 and that "[s]ubsequent treatment notes indicate[d] persistent complaints of depression and anxiety." (TR 24).  However, the ALJ reasoned that mental status examinations conducted by Dr. Haque, Plaintiff's treating psychiatrist, "revealed few significant abnormalities. . . . [Plaintiff] was fully oriented with no evidence of disordered thought processes, delusions, or hallucinations [and Plaintiff] was cooperative with little evidence of communicative deficits." (TR 24).

The treatment records of Dr. Haque consist mainly of notes of medications prescribed and checklists concerning Plaintiff's mental status.  There is nothing in these records indicating that Plaintiff exhibited severe functional limitations or that his varying symptoms of depression, anxiety, irritability, and anger interfered with his ability to function.  The treating psychiatrist's notes show that Plaintiff appeared for all but one of his medication management appointments, that he was compliant with his prescribed medications, that he was appropriately dressed, that he was cooperative, that he generally exhibited normal speech and an appropriate affect, and that he did not exhibit delusions, hallucinations, or abnormal

thought processes. (TR 404, 410, 415, 524, 526, 530, 532, 535).   There is substantial evidence in the record to support the ALJ's finding that independent of Plaintiff's alcohol abuse he did not have a severe mental impairment.

Plaintiff contends that the ALJ improperly interpreted the medical record of Plaintiff's hospitalization for treatment of depression and alcohol abuse in June 2008. However, the ALJ accurately summarized this record, which contains the statement of Dr. Raisani, Plaintiff's treating psychiatrist during this hospitalization, that during his examination Plaintiff "[e]ndorses some hallucinations probably related to alcohol and drugs." (TR 353). Dr. Raisani also reported Plaintiff's statement that he had been drinking daily and excessively and was also abusing Lortab®, a narcotic medication, prior to his admission. (TR 362).

Although Plaintiff argues that the ALJ's credibility determination was not supported by the record, Plaintiff does not point to any specific portions of the record presenting evidence that he suggests detracts from the ALJ's credibility determination.   The ALJ provided reasons in his decision for the credibility determination. (TR 27).   The ALJ reasoned that the medical evidence, including the report of the consultative examiner, Dr. Bagley, and the report of a physical examination of Plaintiff in June 2008, was inconsistent with Plaintiff's complaints of inability to lift or perform other work-related functions.  As the ALJ pointed out, Dr. Bagley noted his observation of Plaintiff during a musculoskeletal examination was not consistent with Plaintiff's complaints. (TR 317).  There is substantial evidence in the record to support the ALJ's credibility determination, and no error occurred

in this regard.

Plaintiff does not challenge the ALJ's RFC finding, and there is substantial evidence in the medical record to support this finding.  The ALJ appropriately elicited vocational testimony concerning the availability of jobs for an individual with Plaintiff's RFC for work. In light of the VE's testimony, there is substantial evidence in the record to support the ALJ's step five finding of nondisability.   Therefore, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____April 9th_____, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____20th____ day of ____March_____, 2012.



GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE